# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BRITANICO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>Defendants. | Court No. 26-04154 |

## COMPLAINT

Plaintiff, BRITANICO LLC ("Plaintiff"), by and through its undersigned attorney, alleges as follows:

1. Plaintiff is a U.S.-based importer of record of imported merchandise subject to the tariffs imposed pursuant to a series of executive orders issued under the International Emergency Economic Powers Act of 1977 ("IEEPA"), 50 U.S.C. § 1701 et seq., and subject to the temporary import surcharge imposed pursuant to Proclamation 11012 under section 122 of the Trade Act of 1974, 19 U.S.C. § 2132 ("Section 122").

2. Beginning in February 2025, President Trump issued multiple executive orders invoking IEEPA as the asserted legal authority to impose tariffs (collectively, "IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. As a direct and unavoidable consequence of these orders, Plaintiff has been required to pay these IEEPA duties on its imported merchandise, resulting in significant and ongoing financial harm.

3. On February 20, 2026, the U.S. Supreme Court held that IEEPA does not authorize the President to impose these duties. *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026) (vacating and remanding No. 24-1287 with instructions to dismiss for lack of jurisdiction, and affirming the judgment in No. 25-250, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (en banc)).

4. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall within the exclusive jurisdiction of the Court of International Trade ("CIT"). *Id.* at 239.

5. Following the Supreme Court's decision on February 20, 2026, the President signed an executive order ending the IEEPA tariff actions under Executive Order 14193, as amended; Executive Order 14194, as amended; Executive Order 14195, as amended; Executive Order 14245; Executive Order 14257, as amended; Executive Order 14323, as amended; Executive Order 14329, as amended; Executive Order 14380; and Executive Order 14382.

6. On the same day, February 20, 2026, the President issued Proclamation 11012, *Imposing a Temporary Import Surcharge To Address Fundamental International Payments Problems*, 91 Fed. Reg. 9339 (Feb. 25, 2026), invoking Section 122 as the asserted legal authority to impose a temporary import surcharge on articles imported into the United States (the "Section 122 surcharge"). As a direct and unavoidable consequence of that proclamation, Plaintiff has been required to pay the Section 122 surcharge on its imported merchandise, resulting in significant and ongoing financial harm.

7. Given that the IEEPA tariffs have been held to be illegal and are no longer in effect, and that the Section 122 surcharge has been held to be unlawful and is no longer in effect, and for the reasons set out in *Learning Resources* and in *Burlap and Barrel*, Plaintiff brings this action to ensure that it can obtain a judgment ordering a full refund of all IEEPA duties and all Section 122 surcharge amounts Plaintiff has paid to the United States.

8. This separate action is necessary because even though the IEEPA duties and underlying executive orders have been held unlawful by the Supreme Court, and the Section 122 surcharge and underlying proclamation have been held unlawful by this Court, Plaintiff is not guaranteed a refund for those unlawfully collected tariffs in the absence of its own judgment and judicial relief.

**PARTIES**

9. Plaintiff is a Texas limited liability company with its principal place of business in The Woodlands, Texas. Plaintiff is a U.S. importer of record for entries of merchandise on which IEEPA duties and the Section 122 surcharge were paid. Plaintiff's CBP importer of record number is 81-458860500.

10. Defendant United States of America received the disputed IEEPA duties and the disputed Section 122 surcharge and is the statutory defendant in this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11. Defendant United States Customs and Border Protection ("CBP") is the agency of the United States charged with administering and enforcing customs laws, including the assessment and collection of duties on imported merchandise, and CBP collected the IEEPA duties and the Section 122 surcharge paid by Plaintiff on its entries.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

13. Defendants are referred to collectively in this Complaint as "Defendants."

**JURISDICTION**

14. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i)(1)(B), which confers on the Court exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States

providing for … (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." *See also Learning Resources*, 607 U.S. at 239.

15. This Court has all the powers in law and equity of a United States district court. 28 U.S.C. § 1585. In an action brought under 28 U.S.C. § 1581, including under § 1581(i), the Court is authorized to enter judgment against the United States for monetary relief and to grant all appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition, including orders directing the refund and reliquidation of unlawfully collected duties, notwithstanding the liquidation status of the affected entries. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

## STANDARD OF REVIEW

16. Pursuant to 28 U.S.C. § 2640(e), actions commenced under 28 U.S.C. § 1581(i) are reviewed in accordance with the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706. Under those standards, the Court is required to hold unlawful and set aside agency action, findings, and conclusions that are contrary to constitutional right, power, privilege, or immunity, or that exceed statutory jurisdiction, authority, or limitations. *See* 5 U.S.C. § 706(2)(B), (C); 28 U.S.C. § 2640(e).

## STANDING

17. 28 U.S.C. § 2631(i) states that "[a]ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."

18. Plaintiff has standing to bring this action because, as the importer of record for entries subject to the challenged IEEPA duties and the challenged Section 122 surcharge as implemented and collected by CBP, which have been held unlawful by the Supreme Court and by this Court respectively, Plaintiff is directly and adversely affected and aggrieved by Defendants'

actions requiring Plaintiff to pay the unlawful IEEPA duties and the unlawful Section 122 surcharge. The relief Plaintiff seeks from this Court would address those injuries.

## TIMELINESS

19. Pursuant to 28 U.S.C. § 2636(i), an action commenced under the Court's residual jurisdiction in 28 U.S.C. § 1581(i) must be filed within two years after the cause of action first accrues.

20. This action was timely commenced within two years of the executive orders implementing the IEEPA tariffs, within two years of Proclamation 11012 implementing the Section 122 surcharge, and within two years of Plaintiff's deposit of the IEEPA duties and the Section 122 surcharge. 28 U.S.C. § 2636(i).

## FACTUAL BACKGROUND

### *I. The President orders a series of tariffs, invoking IEEPA for his authority.*

### A. The IEEPA Duties

21. On February 1, 2025, President Trump issued three Executive Orders imposing tariffs on imports from Canada, Mexico, and China. Each Executive Order purported to rely on IEEPA as authority to impose tariffs, asserting the existence of national emergency as justification (collectively, "Trafficking Tariff Orders").

22. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"), imposed an additional 25% tariff on the import of goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.* at 9118.

23. The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"), declared an emergency because of opioid trafficking, and imposed a 25% tariff, with certain exceptions.

24. The executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order"), imposed an additional 10% ad valorem duties on virtually all goods originating in China. Executive Order 14195 also declared an emergency because of opioid trafficking, declaring that the "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

25. The China Tariff Order imposed an additional 10% ad valorem tariff on products from China imported into the United States in addition to existing duties.

26. On February 5, 2025, the President issued another order, Executive Order 14200, 90 Fed. Reg. 9277, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* (Feb. 11, 2025), which amended the China Tariff Order.

27. On March 3, 2025, the President issued Executive Order 14228, 90 Fed. Reg. 11463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* (Mar. 7, 2025), which again amended the China Tariff Order by

increasing the IEEPA duties on imports from China to 20%, claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis" as justification. *Id.*

28. On April 2, 2025, citing trade deficits with the United States' trading partners as its own national emergency, the President issued Executive Order 14257, 90 Fed. Reg. 15041, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits* ("Reciprocal Tariff Order"), which imposed a 10% baseline "reciprocal" tariff on nearly all imports to the United States, effective April 5, 2025, and additional "reciprocal" tariffs on 57 countries, effective April 9, 2025. *Id.* at 15049-50 (Annex I). These higher country-specific tariffs ranged from 11% to 50%. *Id.*

29. The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies ... suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *Id.* at 15041.

30. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on products of China by 50 percentage points – from 34% to 84% – in Executive Order 14259, 90 Fed. Reg. 15509, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*.

31. On April 9, 2025, the President issued Executive Order 14266, 90 Fed. Reg. 15625, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, suspending for ninety days the higher country-specific "reciprocal" tariffs on all countries except China, for which "reciprocal tariff" was increased again from 84% to 125%. The 20% trafficking tariff previously imposed on imports from China remained in effect, such that most imports from

China were subject to a minimum IEEPA tariff rate of 145%. In the months since, the President has issued additional executive orders modifying the tariffs imposed by Executive Order 14257.[1]

32. In implementing the Executive Orders' tariff regime, the Defendants directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring the goods subject to the IEEPA duties to be entered under new tariff codes, in various chapter 99 headings.

33. The Executive Orders discussed above are referred to collectively herein as the "Challenged Tariff Orders."

34. On April 14, 2025, several importers filed an action in this Court challenging the legality of the IEEPA duties. *See V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066, ECF No. 2 (Apr. 14, 2025). This Court held that the orders were unlawful and the Federal Circuit, sitting en banc, affirmed. The Federal Circuit's decision was in turn affirmed by the Supreme Court on February 20, 2026.

35. CBP continued to collect duties imposed by the Challenged Tariff Orders while the *V.O.S. Selections* litigation and related litigation were pending, and only announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313*, Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026).

---

[1] *See, e.g., Executive Order 14298: Modifying Reciprocal Tariff Rates to Reflect Discussions With the People's Republic of China, 90 Fed. Reg. 21831 (May 21, 2025); Executive Order 14316: Extending the Modification of the Reciprocal Tariff Rates, 90 Fed. Reg. 30823 (July 10, 2025); Executive Order 14326: Further Modifying the Reciprocal Tariff Rates, 90 Fed. Reg. 37963 (Aug. 6, 2025); Executive Order 14334: Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China, 90 Fed. Reg. 39305 (Aug. 14, 2025); Executive Order 14346: Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security Agreements, 90 Fed. Reg. 43737 (Sept. 10, 2025); Executive Order 14358: Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China, 90 Fed. Reg. 50729 (Nov. 7, 2025); Executive Order 14360: Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products, 90 Fed. Reg. 54091 (Nov. 25, 2025).*

**B. CBP's Implementation of the IEEPA Duties**

36. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

37. CBP is responsible for assessing and collecting any tariffs, including the IEEPA duties, due upon entry of imported goods. Tariff rates are determined principally by the classification of the goods under the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202.

38. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. *See* 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

39. Chapter 99 of the HTSUS provides for special classification provisions and requirements that apply in addition to the tariff rates provided for in Chapters 1-97 of the HTSUS. *See* 19 U.S.C. § 1202. Subchapter III to Chapter 99, HTSUS, provides for "Temporary Modifications Established Pursuant to Trade Legislation." *Id.*

40. In implementing the trafficking IEEPA tariffs and the reciprocal IEEPA tariffs, Defendants directed changes to the HTSUS, requiring that goods subject to the IEEPA tariffs to be entered under new tariff codes within Subchapter III to Chapter 99, HTSUS, in addition to all other applicable HTSUS subheadings.[2]

---

[2]*See, e.g., Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9431 (February 12, 2025); Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1 2025 Executive Order Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11426 (March 6, 2025); Executive Order 14257 at Annex III, 90 Fed. Reg at 15088-15109.*

41. CBP communicates to the trade community changes to the HTSUS and its administration of those changes through its Cargo Systems Messaging Service ("CSMS"). Through CSMS guidance,[3] CBP has directed and effectuated the assessment and collection of the unlawful IEEPA duties challenged in this action. Each such CSMS guidance constitutes final agency action subject to review under the APA because it represents the consummation of CBP's decision-making process and announces CBP's definitive implementation of the IEEPA duties.

**C. Liquidation**

42. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

43. When merchandise is imported into the United States, the importer of record is required to file an entry declaration asserting the value, country of origin, and HTSUS classification of the imported goods, and to deposit estimated duties based on that declaration. *See* 19 U.S.C. § 1484.

44. Unless liquidation of an entry is extended or suspended by CBP, liquidation, i.e., the final and conclusive determination of the duties owed on the entry, must occur within one year from the date of entry. *See* 19 U.S.C. § 1504.

45. Prior to liquidation, CBP has discretion to examine or review an entry to verify the final value, classification, duty rate, and amount of duties owed. In the ordinary course, however, and particularly for high volumes of routine entries, liquidation occurs automatically through CBP's systems without individualized inspection or substantive review.

[3]See, e.g., CSMS # 64299816, Update – Additional Duties on Imports from China and Hong Kong (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d52328; U.S. Customs & Border Prot., CSMS # 64680374, Guidance – Reciprocal Tariffs, April 5 and April 9, 2025, Effective Dates (Apr. 8, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3daf1b6.

46. For "formal" entries with an entered value over $2,500, automatic liquidation typically occurs at least 314 days and not more than 1 year after the date of entry of the goods. Notice of liquidation for formal entries is posted on CBP's website at https://trade.cbp.dhs.gov/ace/liquidation/LBNotice/. For "informal" entries with an entered value of $2,500 or less, automatic liquidation typically occurs within one month after entry.

47. "Decisions" of CBP enumerated in 19 U.S.C. § 1514(a), as well as clerical errors, mistakes of fact, or other inadvertence, become final 180 days after liquidation unless an administrative protest is filed. *See* 19 U.S.C. § 1514(a). But not all liquidations are protestable: where CBP acts in ministerial capacity in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1052-53 (Fed. Cir. 2024).

48. This Court has recently held that the imposition of tariffs purportedly authorized under IEEPA does not constitute a protestable "customs decision" within the meaning of 19 U.S.C. § 1514 so long as the Executive Orders imposing the IEEPA duties remain in effect. As a result, liquidation of entries subject to such duties does not give rise to § 1514 finality, and importers are deprived of the ability to challenge the duties through the administrative protest process. *See AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, Slip Op. 25-154 at 7, Consol. Court No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025).

49. In *AGS*, this Court expressly took note of the Government's representations made in that case and in related cases that "it will not object to the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful." *AGS*, Slip Op. 25-154 at 3. This Court held that principles of judicial estoppel would preclude the Government from later adopting a contrary position. *Id.* at 5. The Court further reaffirmed, consistent with its unanimous decision in *In Re Section 301 Cases*, that it possesses "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties."

*Id.* at 6 (citing *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021)). On that basis, the Court concluded that, once jurisdiction under 28 U.S.C. § 1581(i) has attached, the Court retains authority to order the reliquidation of entries and refund of IEEPA duties – even after liquidation – if the IEEPA duties are ultimately determined to be unlawful by the Supreme Court.

***II. The Supreme Court has held that the IEEPA duties are not authorized.***

50. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

51. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

52. Sitting en banc, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

53. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), cert. granted before judgment, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

54. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, 607 U.S. at 255.[4]

***III. This Court has held that the Section 122 surcharge is not authorized.***

55. On February 20, 2026, the same day the Supreme Court issued its decision in *Learning Resources*, the President issued Proclamation 11012, *Imposing a Temporary Import Surcharge To Address Fundamental International Payments Problems*, 91 Fed. Reg. 9339 (Feb. 25, 2026).

56. Proclamation 11012 invoked Section 122 of the Trade Act of 1974, 19 U.S.C. § 2132, as the asserted legal authority for a temporary import surcharge, and invoked section 604 of the Trade Act of 1974, 19 U.S.C. § 2483, to embody that surcharge in the HTSUS.

57. Section 122 authorizes the President, whenever "fundamental international payments problems require special import measures to restrict imports," to proclaim, for a period not exceeding 150 days unless extended by Act of Congress, a temporary import surcharge not to exceed 15 percent ad valorem. 19 U.S.C. § 2132(a).

58. Proclamation 11012 imposed a temporary import surcharge of 10 percent ad valorem on articles imported into the United States, with limited exceptions, effective February 24, 2026, and stated that the surcharge should remain operative until July 24, 2026.

59. In implementing the Section 122 surcharge, Defendants directed changes to the HTSUS, requiring that goods subject to the surcharge be entered under new tariff codes within Subchapter III to Chapter 99, HTSUS, in addition to all other applicable HTSUS subheadings.

[4] This Complaint cites the *Learning Resources* opinion because it was the lead case; the Supreme Court actually vacated *Learning Resources* for lack of jurisdiction and affirmed the Federal Circuit in *V.O.S. Selections*.

60. CBP assessed and collected the Section 122 surcharge from Plaintiff pursuant to Proclamation 11012 and the resulting HTSUS provisions.

61. On May 7, 2026, a three-judge panel of this Court held that Proclamation 11012 is invalid, concluding that the balance-of-payments findings on which the proclamation rested do not constitute balance-of-payments deficits within the meaning of Section 122, and that the proclamation's use of trade and current account deficits to stand in the place of balance-of-payments deficits renders the proclamation ultra vires. *See Burlap and Barrel, Inc. v. United States*, Slip Op. 26-47, 2026 WL 1257669, Consol. Court Nos. 26-01472 & 26-01606 (Ct. Int'l Trade May 7, 2026) (decided together with *Oregon v. United States*).

62. The decision was issued by a divided panel of Judges Mark A. Barnett, Claire R. Kelly, and Timothy C. Stanceu, with Judge Stanceu dissenting on the ground that judicial review of the President's exercise of delegated authority under Section 122 must be limited and deferential.

63. This Court entered a permanent injunction against collection of the Section 122 surcharge only as to the plaintiffs before it and declined to enter a universal injunction. Relief was therefore party-specific.

64. The Government appealed to the Court of Appeals for the Federal Circuit on May 8, 2026. This Court denied the Government's motion to stay enforcement of its judgment pending appeal on May 20, 2026. *See* Slip Op. 26-53, Consol. Court Nos. 26-01472 & 26-01606 (Ct. Int'l Trade May 20, 2026). On June 11, 2026, the Federal Circuit granted the Government's motion for a stay pending appeal. *See Oregon v. Trump*, Nos. 2026-1804, 2026-1805 (Fed. Cir. June 11, 2026). That appeal remains pending.

65. The Section 122 surcharge expired by operation of the 150-day limit in 19 U.S.C. § 2132(a) on July 24, 2026. The expiration of the surcharge did not refund the amounts already collected, and Defendants have not refunded the Section 122 surcharge collected from Plaintiff.

66. CBP has not established any administrative process through which Plaintiff may obtain a refund of the Section 122 surcharge. The Consolidated Administration and Processing of Entries system constructed by the Government to process refunds of IEEPA duties does not accept entries that do not carry an IEEPA tariff provision, and therefore cannot process Plaintiff's entries on which only the Section 122 surcharge was assessed.

67. Because relief in *Burlap* and *Barrel* was limited to the plaintiffs in that action, Plaintiff cannot obtain a refund of the Section 122 surcharge without its own judgment and judicial relief in this Court.

### *IV. Plaintiff paid the IEEPA duties and the Section 122 surcharge.*

68. As of the filing of this Complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders under newly created IEEPA tariff provisions.

69. As of the filing of this Complaint, Plaintiff has also paid the Section 122 surcharge imposed by Proclamation 11012 under the tariff provision created for that surcharge.

70. Plaintiff has been required to pay these IEEPA duties on a continuous and ongoing basis in connection with its importations.

71. Plaintiff does not plead individual entry numbers or a total dollar amount because Plaintiff's claims concern all entries on which Plaintiff paid IEEPA duties or the Section 122 surcharge and for which complete relief, including all refunds and interest required by law, has not been provided. Entry-specific information is available from CBP's records and Plaintiff's import records and can be identified as necessary in the implementation of any judgment.

**COUNT I**

**THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN LEARNING RESOURCES**

72. Plaintiff realleges and incorporates herein by reference the paragraphs 1-71 of the Complaint as if fully set forth herein.

73. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this Court's ruling and the Federal Circuit's affirmance of this Court's opinion in *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 *et seq*., when he imposed tariffs on imported goods.

74. The Supreme Court held that tariffs imposed under IEEPA are unlawful, concluding that the statutory authority to "regulate … importation" does not encompass the power to impose tariffs. *Learning Resources*, 607 U.S. at 232. The Court accordingly affirmed the Federal Circuit, which had in turn affirmed this Court's merits ruling on the IEEPA tariffs. *Id.* at 255.

75. The Challenged Tariff Orders purport to impose duties and modify the HTSUS solely under IEEPA.

76. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

77. This Court is bound by the Supreme Court's decision in Learning Resources and the Federal Circuit's affirmance, and should apply that controlling precedent here. Accordingly, Plaintiff respectfully requests that the Court declare the Challenged Tariff Orders unlawful as

applied to Plaintiff, enjoin Defendants from enforcing those orders against Plaintiff, and order the refund of all IEEPA duties paid by Plaintiff, together with interest as provided by law.

## COUNT II

## PROCLAMATION 11012 IS UNLAWFUL FOR THE REASONS STATED BY THIS COURT IN BURLAP AND BARREL

78. Plaintiff realleges and incorporates herein by reference the paragraphs 1-77 of the Complaint as if fully set forth herein.

79. In *Burlap and Barrel*, this Court considered a challenge to the President's authority to impose a temporary import surcharge under Section 122, holding that the President exceeded his authority under Section 122, 19 U.S.C. § 2132, when he imposed the surcharge by Proclamation 11012.

80. This Court held that the surcharge imposed under Section 122 is unlawful, concluding that the trade and current account deficits on which Proclamation 11012 relied do not constitute balance-of-payments deficits within the meaning of the statute, and that the proclamation is therefore ultra vires.

81. Proclamation 11012 purports to impose a surcharge and modify the HTSUS solely under Section 122 and section 604 of the Trade Act of 1974.

82. CBP lacked the authority to assess and collect the Section 122 surcharge paid by Plaintiff on its imports into the United States, and lacks the authority to retain that surcharge.

83. The Section 122 surcharge has expired by operation of the 150-day limitation in 19 U.S.C. § 2132(a), and no administrative process exists through which Plaintiff may obtain a refund of the surcharge.

84. Because this Court's relief in *Burlap* and *Barrel* was limited to the plaintiffs in that action, and because the Government's appeal of that decision remains pending before the Court of

Appeals for the Federal Circuit, Plaintiff requires its own judgment in this action to obtain and preserve complete relief.

85. Accordingly, Plaintiff respectfully requests that the Court declare Proclamation 11012 unlawful as applied to Plaintiff, enjoin Defendants from enforcing that proclamation against Plaintiff, and order the refund of all Section 122 surcharge amounts paid by Plaintiff, together with interest as provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

b. order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

c. order the United States to refund to Plaintiff all IEEPA duties collected on those entries, together with interest as provided by law;

d. order CBP to reliquidate any entries that have been liquidated with the Section 122 surcharge;

e. order CBP to liquidate all unliquidated entries subject to the Section 122 surcharge without the Section 122 surcharge;

f. order the United States to refund to Plaintiff all Section 122 surcharge amounts collected on those entries, together with interest as provided by law;

g. award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

h. grant any further relief this Court deems just and proper.

///

///

Respectfully submitted,

/s/ Anatolii Trembach
Anatolii Trembach

TREMBACH LAW FIRM, APC
27001 Agoura Road, Suite 350
Calabasas, CA 91301
(310) 744-1328
Anatolii.Trembach@trembachlaw.com
*Counsel for Plaintiff* BRITANICO LLC

Dated: September 25, 2026